[Civ. No. 1973.   Third Appellate District.—May 28, 1919.]

# MARY A. VOORHEIS, Appellant, v. TIDEWATER SOUTHERN RAILWAY COMPANY (a Corporation), et al., Respondents.

[1] NUISANCES—OPERATION OF RAILROAD ON CITY STREET—EQUITABLE RELIEF.—Where the acts of a railway company, in allowing freight-cars to stand and remain on a city street for a long period of time, in permitting large quantities of smoke and steam to be emitted from the locomotives and carried into the faces of those in the vicinity and into the homes and business places in the vicinity, and in permitting noises from the valves, steam whistles, and bells to be set forth, constitute not only a nuisance, but also a public nuisance, a case for abatement of the nuisance or for relief through the restraining power of the equity court is shown.

[2] ID.—LIABILITY OF RAILROAD FOR MAINTAINING.—The *quasi*-public character of railroads does not relieve them of liability for maintaining a nuisance; and if they have done acts which result in a nuisance, they are in no different situation than an individual proprietor.

[3] ID.—ACTION TO ABATE—IMMATERIAL ALLEGATIONS.—In an action by a property owner against a railway company operating over a city street to abate a nuisance injurious to plaintiff, and for which the law affords a remedy, matters set forth in the complaint relating to the railway company's franchise and its violation may be disregarded.

[4] ID.—RIGHT OF PRIVATE INDIVIDUAL TO INJUNCTION—SPECIAL DAMAGE.—A private citizen is entitled to an injunction for a public wrong if he suffers an injury peculiar to himself, and not sustained by the public in general, and the rule applies to nuisances as well as other wrongs.   But unless the complainant has suffered special damage, equity will not enjoin a public nuisance on the application of an individual, either in his own behalf or in behalf of himself and others of like interest who either do or do not join in the application.

[5] ID.—UNWARRANTED OBSTRUCTION OF STREET—ABATEMENT BY PROPERTY OWNER INJURED.—The owner of a business block of buildings fronting on a city street over which a railway company operates its cars may maintain an action to enjoin such railway company from so using the street as to constitute an unwarranted interference with the free, unobstructed, and comfortable use and enjoyment of his property.

APPEAL from a judgment of the Superior Court of Stanislaus County. W. H. Langdon, Judge. Reversed.

The facts are stated in the opinion of the court.

Brown & Hindman for Appellant.

Arthur L. Levinsky for Respondents.

CHIPMAN, P. J.—Plaintiff brought the action to have the defendant railroad corporation restrained from performing certain acts in connection with the operation of its railroad. Defendants filed general and special demurrers to the complaint, which were sustained. Plaintiff elected to stand upon her complaint, and judgment was entered against her for costs, from which judgment she prosecutes this appeal.

The complaint alleged: That plaintiff was and is a citizen, householder, freeholder, and taxpayer of the city of Modesto, in Stanislaus County; that the defendant, Tidewater Southern Railway Company, is a corporation organized under the laws of the state of California, "and the direct successor in interest of the Tidewater and Southern Railroad Company"; that the city of Modesto is a municipal corporation; that on or about May 17, 1911, the city of Modesto granted to said railroad company a franchise whereby it was granted the right and privilege of constructing, maintaining, and operating a railroad over certain streets and alleys in said city. A copy of said franchise is attached to and made a part of the complaint. It was then alleged that said railroad was to be constructed of standard gauge and to run between Stockton and Turlock; that cars were to be operated thereon "by electricity, gasoline, or any other lawful motive power, except steam, horses, and mules." The route of said railroad through the city of Modesto was then set forth. It was then alleged that among the provisions of said franchise were the following: "All freight and express matter shall be hauled and transported in closed cars having the same general appearance as passenger-cars, but omitting the windows in the sides and ends thereof, and said cars shall be painted the same general color as the passenger-cars, and shall have a

generally neat appearance, save and except, however, that between the hours of 10:30 P. M. and 6 A. M. freight matter may be transported in cars such as may generally be used upon steam railroads for the transportation of freight; and save and except, further, that during any hour of the day or night perishable freight only may be transported in such freight-cars as may be used by steam railroads for the transportation of freight, in trains of not more than five cars." And also the following: "That said grantee, its successors and assigns, shall not permit, nor suffer nor allow, any freight or express cars to be side-tracked, or to stop on said Virginia Avenue or N Street or Ninth Street for more than five minutes in any one block."

It was then alleged that Virginia Avenue and Ninth Street are in a residence portion of the city of Modesto, and that Ninth Street is a business street; that plaintiff is the owner of a business block fronting ninety feet on Ninth Street, with stores on the ground floor and hotel and living apartments above. Violations of the two provisions of the franchise above set forth were alleged, as follows: That defendant Railroad Company was using locomotives propelled by steam "and equipped with loud and shrill steam whistles," bells, valves for blowing off surplus steam, and smokestacks; that said company was engaged in hauling freight of every character, at every hour of day or night, by freight trains composed of from ten to thirty cars of various kinds, including box-cars, flat-cars, stock-cars and refrigerator-cars, hauled by means of steam locomotives; that freight-cars have been permitted to stand and remain on Virginia Avenue, N and Ninth Streets for more than five minutes in one block, and for more than half an hour at a time, "thereby obstructing and impeding travel and traffic on said streets to the great detriment, annoyance, and inconvenience of the citizens of said city and of the public"; that large quantities of smoke and steam are emitted from the locomotives and carried into the faces of those in the vicinity and into the homes and business places in the vicinity of said streets so traversed by said railroad; noises from the steam valves, steam whistles, bells, and by the rumbling and screeching of wheels, both day and night, were set forth, whereby "patronage is driven away from

the business houses located on said streets, guests are turned away from hotels and rooming-houses, homes in the vicinity are rendered uncomfortable and undesirable,'' and ''the value of property and its rental value are greatly lessened and reduced, to the great injury, damage, and detriment of all persons living along or engaged in business in the vicinity of said streets so traversed by said railroad, and of all persons who own property abutting upon any of said streets, including the plaintiff herein.'' It was then stated that defendant Railroad Company had many times been requested to desist from violations of its said franchise, to which it had given no heed; that, at a meeting of citizens to protest against further violations of said franchise, the president of said defendant Railroad Company declared ''it to be the intent and purpose of said defendant to continue to ignore and disregard the provisions of said franchise.'' Plaintiff averred that she made the city of Modesto a defendant because the officers and governing body of said city, though implored by plaintiff and other citizens to enforce said franchise, have failed, refused, and neglected so to do.

The complaint prayed that defendant Railroad Company, its servants, agents, etc., be enjoined from violating any of the terms of said franchise, particularly in five particulars, appearing in the provisions of the franchise above set out, and for general relief.

Separate demurrers by the defendants were filed. In ruling upon the demurrers the court said: ''I have come to the conclusion that a citizen cannot maintain an action to restrain the violation of a franchise. He is not without remedy, however. If the facts warrant, he may proceed against the company for maintaining a nuisance provided he can show that his injury is different in kind from that of his neighbors, not merely different in degree. He may also, through the attorney general of the state, bring an action to forfeit the company franchise for the violation. thereof.''

Section 3479 of the Civil Code defines a nuisance as follows: ''Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or

use, in the customary manner of any . . . highway, is a nuisance. A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon individuals may be unequal.'' (Civ. Code, sec. 3480.) Section 3493 of the Civil Code provides as follows: ''A private person may maintain an action for a public nuisance, if it is specially injurious to himself, but not otherwise.''

[1] That the acts complained of constituted not only a nuisance, but also a public nuisance, very clearly appears; and that they were an obstruction to the free use of plaintiff's property and resulted in an unlawful obstruction of a highway is equally clear. Admitting the facts to be true, as does the demurrer, a case for abatement of the nuisance or for relief through the restraining power of the equity court is, we think, satisfactorily shown. A public nuisance is created by the construction of a railroad in a highway without legal authorization. [2] The *quasi*-public character of railroads does not relieve them of liability; and if they have done acts which result in a nuisance, they are in no different situation than an individual proprietor. (20 R. C. L. 454.)

The demurrer seems to have been sustained on the ground that plaintiff was seeking to restrain the violation of a franchise which apparently the learned trial judge thought he could not do in this action. The court, however, added that plaintiff was not without remedy. ''If the facts warrant,'' said the court, ''he may proceed against the company for maintaining a nuisance provided he can show that his injury is different in kind from that of his neighbors, not merely different in degree.'' And this brings us to what we regard as the only question to be decided. It is true that plaintiff in her prayer asks that defendant be ''enjoined from violating any and all of the terms, provisions, or conditions of said franchise . . . '' and ''particularly from violating said franchise in these particulars: [There follows an enumeration of the various provisions of the franchise which it is claimed had been and were being violated] ; that the plaintiff have all of the relief which to the court may seem meet and proper in the premises, and which may to equity appertain.''

[3] From our view of the case we do not think it was necessary that plaintiff should have pleaded the franchise and its violation. The acts and conduct of defendant were such as to constitute a nuisance. If the franchise furnished justification, it was for defendant to plead it or otherwise meet the effect of the acts charged in the complaint. Plaintiff chose to show by what right defendant was using the streets and its violation of that right. But this was immaterial. If defendant was maintaining a nuisance injurious to plaintiff which the law affords a remedy to have abated, it was only necessary to show the acts or facts constituting the nuisance, that defendant was the author of them, and the resulting injury to plaintiff. Disregarding, therefore, the matters set forth relating to defendant company's franchise and its violation, and considering the acts alleged to have been committed and the threat to continue them unless restrained and the prayer for such relief as the facts set forth would warrant, we think the complaint sufficient to constitute a cause of action to restrain defendant company from further committing such acts, at least, as may be shown to be injurious to plaintiff's property which defendant is unauthorized to commit in the operation of its cars.

[4] The rule is stated as follows: "A private citizen is entitled to an injunction for a public wrong if he suffers an injury peculiar to himself, and not sustained by the public in general and the rule applies to nuisances as well as other wrongs. But unless the complainant has suffered special damages, equity will not enjoin a public nuisance on the application of an individual, either in his own behalf or in behalf of himself and others of like interest who either do or do not join in the application." (R. C. L. 477.)

[5] The question to be determined in this class of cases is whether in the particular instance in hand the plaintiff has suffered or is suffering an injury peculiar to himself and not sustained by the public in general.

Plaintiff is the owner of a business block of buildings fronting on one of the streets of the city of Modesto over which defendant operates its cars. The injury complained of consists of an unwarranted interference with the free, unobstructed, and comfortable use of this property caused by the unlawful obstruction of the street by defendant com-

pany and the use of the street in a manner to injuriously affect the enjoyment of said buildings.

The appellate courts of this state have had occasion to deal with such a situation in many cases, to some of which we will call attention.

Under section 249 of the Practice Act, provisions relating to nuisance similar to those in the codes are found. In *Blanc* v. *Klumpke*, 29 Cal. 156, it was held that if a nuisance in a highway affects the plaintiff in common with the public at large in the use of the highway, he cannot have his private action; but if the free use of his private property is interfered with by such nuisance, he may have his private action to abate the same. The principle was applied in *Gardner* v. *Storrer*, 89 Cal. 26, [26 Pac. 618].

The question was carefully considered in *McLean* v. *Llewellyn*, 2 Cal. App. 346, [83 Pac. 1082, 1085]. The case was reheard in the appellate court and hearing in the supreme court denied. It was the case of an obstruction in a street placed by defendant, the alleged injury being to the lot fronting on the street owned by plaintiff. Said the court: "It is a familiar rule and well-established principle that the owner of a lot abutting on a street has an easement or right of way over it, which in the strictest sense of the word is property (citing cases). And though this right is one that he holds in common with the public, yet in so far as it affects the value of his property it is a right peculiar to himself, and any interference with it constitutes a private as well as a public nuisance. . . . The test is, not the greater or less number of persons who are affected by the nuisance, but whether the particular right of a land owner is affected."

It was claimed by appellant when the streets became public, private rights of the kind claimed by appellant (obstructing the street) are merged in the public right and that interference with them cannot be the subject of a private action. Said the court: "But we can conceive of no principle upon which this contention can be allowed. The circumstance alleged in support of it is that a multiplicity of suits might be brought; but, under the authorities last cited, this is immaterial. To what extent such suits might be brought is to be determined by the simple consideration whether the land of plaintiff has been injuriously affected."

*Williams* v. *Los Angeles Ry. Co.,* 150 Cal. 592, [89 Pac. 332], is an instructive case, in which plaintiff sought injunctive relief against defendant company for obstructing the public street of the city of Los Angeles. Mr. Justice Shaw, speaking for the court, said: "Every lot fronting upon a street has as appurtenance thereto, certain private easements in the street, in front of and adjacent to said lot, which easements are a part of the lot and are private property as fully as the lot itself, though exercised in the street and extending into and over the street. Any obstruction to the use of the street which impairs or destroys these easements is a private injury, special and peculiar to the owner of the lot and different and distinct from the injury to the general public and from that which the owner suffers as a part of the general public. . . . As an abutting owner, he has the right to the private easement in question, and for an injury thereto he may sue for damages or to enjoin the continuance of the injury regardless of the fact that the same obstruction also constitutes an injury to his public right of travel and regardless of the number of persons who may suffer a similar injury to similar private easements appurtenant to other lots fronting on the street." (See, also, *Cushing-Wetmore Co.* v. *Gray,* 152 Cal. 118, [125 Am. St. Rep. 47, 92 Pac. 70].)

In the very recent case of *Strong* v. *Sullivan,* 180 Cal. 331, [4 A. L. R. 343, 181 Pac. 59], the question was again before the supreme court and it was there said, Mr. Justice Melvin writing the opinion: "The finding that defendant's wagon obstructed the ingress and egress of plaintiff and his tenants to and from his building was equivalent to a holding that defendant was maintaining a public nuisance which was especially injurious to plaintiff and which, therefore, might be enjoined in this suit because an injury to the use of the street which impairs plaintiff's private easements in the street in front of and adjacent to his lot amounts to an injury giving plaintiff, as an abutting owner, the right to maintain an action for damages or for an injunction."

It would have strengthened the complaint had plaintiff been more specific in showing in what way the Railroad Company's acts caused injury to his property in particular and bestowing less attention to its acts in affecting the public in general or other private property. But we think

enough is shown to entitle her to such relief as the facts proven may warrant.

The judgment is reversed.

Hart, J., and Burnett, J., concurred.