[No. 8,191.   Department One.—November 28, 1884.]

GUSTAVE TUEBNER ET AL., RESPONDENTS, *v.* CALIFOR-NIA STREET RAILROAD COMPANY, APPELLANT.

NUISANCE—DUTY OF OWNER OF PROPERTY.—An owner of property must not use it, even in a lawful business, in such a manner as to interfere with another in the legitimate use of his property.

ID.—CABLE RAILROAD—LICENSE.—A license granted by a municipality to a railroad company, to run a line of cable cars along the streets of the city, does not authorize the company to construct and operate a stationary engine upon its land, in such a manner as to interfere with the comfortable enjoyment of his premises by an adjoining proprietor.

ID.—DAMAGES—ABATEMENT.—In an action to abate a nuisance and for damages, the fact that the defendant remedied the evil complained of after the commencement of the suit does not affect the right of plaintiff to recover damages for injuries sustained prior to that time.

ID.—MEASURE OF DAMAGES.—In an action for damages for a nuisance, it is not incumbent upon the plaintiff to prove the loss in value caused by the injury.    The jury may fix upon a reasonable sum as a proper compensation.

APPEAL from an order of the Superior Court of the city and county of San Francisco refusing a new trial.

The facts are stated in the opinion of the court.

*H. S. Brown,* and *J. E. Foulds,* for Appellant.

*E. F. Preston,* for Respondents.

MYRICK, J.—The action was brought to abate an alleged nuisance, and to recover damages.   The jury gave a verdict for the plaintiffs for $1,000 damages; and from the judgment rendered therefor, and an order denying a new trial, the defendant appealed.

The case is, in substance, as follows : The plaintiffs, owners of a lot of land near the corner of Larkin and California streets, in the city and county of San Francisco, had thereon two dwelling-houses (one occupied by the family of one of the plaintiffs, the other by the family of the other plaintiff), and on the rear of the lot a two-story building, in the lower story of which the plaintiffs carried on the manufacture of show-cases, the upper story being occupied by a tenant. The defendant constructed a street railroad along California street, and for the purpose of using steam as a motive power in propelling the cars, by means of a cable, constructed a building on the corner of the streets above named, which building adjoined the property of plaintiffs. This building was used in connection with the street railroad as a car-house, and had an engine and furnace, with a smoke-stack extending to a point twenty feet higher than plaintiff's houses. Cars were elevated from one story to another by the aid of machinery. We quote substantially from the testimony of plaintiffs, for the purpose of showing the case as presented by them to the court and jury :

"From the time the railroad commenced running, about February 1st, 1878, to August 2d, 1878, when this suit was commenced, we were annoyed by soot, and by the machinery and the elevator running up and letting down cars. It shook the whole house ; commenced about seven o'clock in the evening, and continued until ten, eleven or twelve o'clock at night—sometimes until one and two ; the noise was continuous during that time ; there was a jarring and shaking of the building ; the plastering was cracked some ; the elevator sometimes shook the whole house ; the soot came from the smoke-stack to our houses, and came in at the windows, and in the back yard ; in the morning I could clean up a whole pailful ; if I lay my hand on the banisters, they are all black ; we were troubled every day with soot; if I open the windows, the dust comes into the whole house ; in the evenings, sometimes when I am reading the paper, they would put the cars upon a small track; I would jump up, thinking it was an earthquake ; the noise mostly is when they are elevating the cars, when the cars went in ; there was shaking and soot that troubled us all the time ; sometimes it shook the house so you would have thought it was an earthquake ; as for the soot, it

was not possible to clean the stairs or place; if you clean it four or five times, it would be the same thing over."

Besides a denial of the shaking, noises, and soot, the defendant pleaded its incorporation for the purpose of operating a street railroad along California street, with endless ropes and stationary steam-engines, and that it had authority from the board of supervisors of the city and county so to operate its road, and that all the structures and machinery were necessary to that end, and were properly constructed and operated. When the defendant offered the orders of the board of supervisors in evidence, the court sustained the plaintiffs' objection thereto. The defendant assigns this ruling as error, on the ground that if it had the legal right to run its cars along the street, the acts complained of could not constitute a nuisance, because the doing of that which is lawful cannot be a nuisance. If this position be correct in its application to this case, the court erred. There is no doubt that the municipality may grant the right to run cars along streets, to be drawn by horses or propelled by steam. The annoyances complained of were not the immediate result of the running of cars; they were caused by the stationary furnace and machinery of the defendant on its own premises. If the defendant had the right to operate its furnace and machinery in the manner and with the result detailed, the orders of the board of supervisors would not add to such right. The object of the testimony offered was to show that the defendant, in operating its road, was doing a legal act, and to claim that, as a stationary engine was necessary, all results to follow the reasonable use of the engine and its appliances were also legal.

To sustain the ruling of the court, it must be conceded that the defendant had a legal right to run its cars on the street, propelled by the use of steam-power. The question, then, is presented: Had the defendant the right to use its own property (the lot at the corner of the streets), in a lawful business, in such a manner as to produce the results complained of? Any person may use his own property in such lawful manner as to him may seem fit, having reference always to the right of others to use their property. A person may not use his own property, even in and about a business in itself lawful, if it be used in such a manner as to seriously interfere with another in the

enjoyment of his right in the use of his property. It is declared by the Civil Code, § 731, that "anything which is injurious to health, or indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action," and damages may be recovered. It is said by Cooley, in his work on Torts, 600, that "where manufacturing operations are carried on with heavy machinery in the part of a city mainly occupied by residences, the jar of machinery may constitute a serious nuisance, injurious, not to comfort merely, but to health; it is usually increased also by smoke, soot, etc." "If the smoke or dust, or both, that arises from one man's premises and passes over and upon those of another, causes perceptible injury to the property, or so pollutes the air as sensibly to impair the enjoyment thereof, it is a nuisance. But the inconvenience must be something more than mere fancy, mere delicacy or fastidiousness; it must be an inconvenience materially interfering with the ordinary comfort, physically, of human existence; not merely according to elegant and dainty modes and habits of living, but according to plain, sober, and simple notions." If a business be necessary or useful, it is always presumable that there is a proper place and a proper manner for carrying it on. It can hardly be said that is a lawful business, which cannot be carried on without detriment to surrounding people. Some classes of business constitute a nuisance *per se;* others may or may not create a nuisance, according as they shall be carried on. The keeping of a hotel or restaurant is a lawful and very necessary business—equally so with running street cars; yet it could not be held that a person carrying on such business, or any other requiring a large consumption of fuel, could erect his chimney to a height that would discharge the smoke and soot into his neighbor's window. It is true, as urged by appellant, that persons preferring to live in the city, rather than the country, must accept many inconveniences—probably all that naturally and necessarily flow from the concentration of populations; but that doctrine should not be carried too far. The law looks to a medium course to be pursued by each for the mutual benefit of all.

Applying these principles to the facts as presented by the

plaintiffs, we are of opinion that it was competent for the jury to determine whether the defendant was carrying on its business in a proper manner ; whether the acts complained of were substantially offensive to the senses of the plaintiffs, or obstructed them in the free use of their property, so as to interfere with their comfortable enjoyment of it. It may have been that a smoke-stack but twenty feet high would foul the plaintiff's premises, and that one forty feet high would not. It may have been convenient for the defendant to hoist its cars from one story to another, and yet not absolutely necessary ; or it may be that the hoisting could have been done without causing a jarring, producing actual discomfort or injury.

As said above, the municipality could grant a franchise for running cars along the street, but it could not grant a franchise to materially injure the plaintiffs in their property rights. The franchise which the defendant claimed to hold did not even assume to be for that end. We are aware of the decisions, that where a franchise has been granted for the running of steam-cars along a street, property owners along the line must abide the natural results of a reasonable and proper exercise of the franchise ; but we are of opinion that the reason of those decisions has no application here. The fact that the defendant had since the commencement of the suit (if such be the fact) remedied the evil complained of, would not interfere with plaintiffs' right to recover damages for injuries sustained before the commencement of the suit. It was not incumbent on the plaintiffs to prove their injury by value ; it may have been of trivial cost to sweep up a pailful of soot, and yet the soot may have caused serious injury ; it may also have been quite out of the question to prove the loss in value sustained by the jarring. It was for the jury to determine a reasonable sum to be proper compensation.

We have examined the points presented by appellant, and are of-opinion that they are substantially covered by the foregoing. Judgment and order affirmed.

SHARPSTEIN, J., concurred.

THORNTON, J., concurring.—I concur in the judgment. The evidence as to the amount in money of the damages accrued

was very slight, yet, as the damages found for the injury suffered are not excessive, I do not think the judgment should be disturbed for that reason. That the acts committed by the defendant constituted a nuisance is clear; nor were such acts either directly or indirectly permitted to be done by the express authority of a statute.