[S. F. No. 14331. In Bank.—August 3, 1932.]

F. W. VOWINCKEL, Respondent, v. N. CLARK & SONS
(a Corporation), Appellant.

157

John L. McNab and S. C. Wright for Appellant.

A. P. Black and A. E. Shaw for Respondent.

THE COURT.—This is an appeal from a judgment for the plaintiff in an action to enjoin the defendant's operation of its factory as a nuisance and for damages.

For more than forty years prior to the trial of this action the defendant has conducted a business of manufacturing sewer-pipe, tile, pottery and stoneware on its property consisting of about eleven acres fronting on the north side of Pacific Avenue in the city of Alameda. It is conceded that the property of the defendant at all times herein was zoned as industrial and was within what was considered a partly industrial and partly residential section of the city of Alameda. About seventeen and a half years after the

commencement of the defendant's operations, the plaintiff purchased the improved residence property consisting of about six acres adjoining the defendant's property on the west. On the plaintiff's land there were a family dwelling and some other buildings to which plaintiff added by a virtual reconstruction thereof involving an investment of from $50,000 to $60,000. The plaintiff is a practicing physician and at all times since its purchase, with the exceptions hereinafter noted, with his assistants and household, has occupied said property as a residence.

In November, 1906, when portions of the factory had been reconstructed after the earthquake of April, 1906, the plaintiff brought an action to enjoin the operation of the factory. The result of that action was an injunctive order that the defendant cease operating its kilns and furnaces unless it raise its main chimney to a height of at least 150 feet. The defendant since said time has maintained said chimney at the height so required.

In 1915 the plaintiff joined the German Red Cross Service as a physician and surgeon and returned to his home in 1922. In 1917 the main building of the defendant's factory was destroyed by fire. After that time it was rebuilt and has increased and expanded from eight kilns and furnaces, inclosed within the brick building which burned in 1917, to eighteen kilns and furnaces constructed in the open except for a corrugated iron roof built over them. A battery of nine of these kilns is placed along and about twenty feet from the fence dividing the plaintiff's and the defendant's properties, and with the opening of the furnaces facing outward. The four most southerly of this battery of kilns are placed practically opposite to and southerly from the plaintiff's dwelling. Since 1917 two other fires have occurred on the defendant's premises, at least one of which caused damage to the fence and trees between the properties, and burned the grass in the rear of the plaintiff's lot. The factory is operated day and night and on Sundays and holidays.

The complaint alleged injuries to and continued discomfort and interference with the peaceable enjoyment of the plaintiff's property by reason of the discharge of large quantities of noxious soot, smoke, and malodorous and injurious gaseous substances; vibrations and noise caused by

the operations of the kilns and furnaces and of freight-cars on the railroad switch in front of the westerly battery of kilns; light disturbances or flares at night caused by the successive combustions in the oil-burning furnaces along the dividing fence; and danger by reason of the fire hazard alleged to exist. The plaintiff sought an injunction to restrain the conduct of the defendant's business in such wise as to interfere with the peaceable enjoyment of his property, and damages in the sum of $20,000. During the course of the trial and pursuant to a stipulation of the parties the trial court viewed the premises, and the plant of the defendant while it was in operation, in the absence of the parties and their counsel.

The court found untrue the allegations of the complaint relating to the emission of filthy and noxious smoke, soot and gas, the maintenance of the railway switch, and the injuries resulting to the plaintiff thereby. The court found, however, that the manner of operation of the kilns and furnaces and the combustion of the fuel therein causes great vibration and noise disturbing to the peace and quiet of the plaintiff and his household, and together with the flares resulting therefrom, prevent the plaintiff from the comfortable use and enjoyment of his property and are offensive to the senses of persons living upon the property of the plaintiff; and that one of the plaintiff's buildings, formerly occupied by help, has become uninhabitable by reason of such vibration and noise and the flares of light from the furnaces. The findings also recite that the operation of said kilns and furnaces is the source of an extraordinary fire hazard found to exist. It was also found that damage to the plaintiff was incapable of ascertainment and that full relief would be accorded to the plaintiff by the issuance of an injunction to the extent hereinafter stated; that any former action between the parties did not constitute an estoppel against the plaintiff inasmuch as the nuisance was continuing in its nature; that the plaintiff was not guilty of laches in bringing the action, nor was the cause of action barred by the statute of limitations.

The judgment decreed that the defendant be enjoined from operating the four southerly kilns and furnaces on the westerly side of its property, and from operating the remaining kilns and furnaces on the westerly side of its

property and northerly of said four southerly furnaces unless and until it shall erect between said northerly furnaces and the property of the plaintiff a substantial fireproof wall or fence at least fifteen feet in height.

Except as to the one particular hereinafter mentioned, the defendant does not contend that the factory as operated does not constitute a nuisance to the plaintiff, but its contention that the findings are unsupported by the evidence is based upon the presence in the record of the following undisputed facts: That the defendant had operated its pottery and tile factory seventeen and one-half years before the plaintiff had purchased and established his home on the adjoining property; that the factory was then in full operation, which the plaintiff knew, and that the plaintiff must also have known or be presumed to have known that the business of the defendant would increase and that its operations would necessarily expand and its facilities enlarge; that the site selected for the factory is and always has been an industrial section on the outskirts of Alameda on marshy and filled ground; that it has operated by permission of the municipal authorities for nearly a half century; that on recently filled land immediately north of the plaintiff's and the defendant's properties has been established the San Francisco Airdrome, where airships are continuously causing noise during the day and night; that twenty acres of land adjoining the defendant's property have been acquired by the Belt Railroad of Alameda upon which to pursue its railroad activities; that immediately adjoining the plaintiff's property on the west is a commercial vegetable garden; and that a short distance to the west are 1,000 acres of tide-land recently deeded by the city of Alameda to the United States to be used as an army base, and adjoining these tide-lands on the west is the Alameda Airport; that one of the main lines of the Southern Pacific Company for the carriage of both passengers and freight, operating trains every half hour during the day and frequently during the night up to 12 o'clock, passes in front of the plaintiff's property on Pacific Avenue; and that the plaintiff keeps on his own property fifteen to twenty police dogs, and at times has kept thereon sheep, rabbits, geese and other animals and fowl.

The defendant urges that it operates its business in the most careful and prudent manner; that its kilns and furnaces are of the most modern type of construction; that the defendant's properties represent an investment of $400,000 to $500,000 as compared to the $50,000 or $60,000 invested by the plaintiff; that the defendant employs constantly about 230 to 240 men with an annual pay-roll of about $270,000; that the four kilns ordered abated represent an investment of about $30,000, and that a cessation of operations as to those kilns will result in laying off thirty or forty employees.

The defendant contends that the court gave no consideration to the great damage that will be sustained by the defendant if its kilns are abated as compared with the slight injury that may be sustained by the plaintiff by their operation. Leaving for later discussion the question whether that contention may properly be made in this case, and bearing in mind that the court did not wholly abate the defendant's conduct of its factory, it is significant that the trial court did not find that the injury to the plaintiff was trivial or slight, but on the contrary found that it was great and irreparable. We do not discover the state of the record to be such as to warrant a holding that that finding is not supported by the evidence. All of the matters argued by the defendant as grounds for its contention were brought to the attention of the trial court, and it must be presumed that the court gave them due consideration in arriving at its conclusion.

We know of no precedent, and the defendant cites none, for holding that the character of injury involved here is not the result of an invasion of a distinct private right and such as to make applicable the doctrines stated in *Hulbert* v. *California etc. Cement Co.*, 161 Cal. 239 [38 L. R. A. (N. S.) 436, 118 Pac. 928], *Judson* v. *Los Angeles Suburban Gas Co.*, 157 Cal. 168 [21 Ann. Cas. 1247, 26 L. R. A. (N. S.) 183, 106 Pac. 581], *Fendley* v. *City of Anaheim*, 110 Cal. App. 731 [294 Pac. 769], *Williams* v. *Blue Bird Laundry Co.*, 85 Cal. App. 388 [259 Pac. 484], and *McIntosh* v. *Brimmer*, 68 Cal. App. 770 [230 Pac. 203]. We are mindful of the fact that the opinion of Melvin, J., in the case of *Hulbert* v. *California etc. Cement Co., supra*, was not concurred in by a majority of the court and that the case

involved a petition for a writ of *supersedeas* to stay the force of the prohibitive injunction pending the appeal on the merits. Nevertheless, the views therein expressed on the so-called doctrine of comparative injuries or "balance of hardship" were adopted by this court in the later case of *People* v. *Selby Smelting & Lead Co.*, 163 Cal. 84, 94 [Ann. Cas. 1913E, 1267, 124 Pac. 692, 1135], which involved the merits of the judgment.

In the present case the court appears to have given due consideration to the situation of the defendant. This is apparent from the fact that it refused to abate entirely the defendant's operations and granted the relief sought to the extent necessary to preserve the rights of both parties. In other words the court, in the exercise of its equity powers, has compared consequences and has considered the injuries resulting to each party, on the one hand if the injunction be wholly denied, and on the other if it be granted. ■ The court, from the evidence presented, gave heed to the rule that in a proper case it will not enjoin the conduct of the defendant's entire business, where such business is not a nuisance *per se,* if a less measure of restriction will afford to the plaintiff the relief to which he may be entitled. (*McMenomy* v. *Baud,* 87 Cal. 134 [26 Pac. 795]; *Tuebner* v. *California St. R. R. Co.,* 66 Cal. 171 [4 Pac. 1162]; *Williams* v. *Blue Bird Laundry, supra; McIntosh* v. *Brimmer, supra.*)

The defendant, nevertheless, seeks to invoke the foregoing rule as a basis for the reversal of that part of the injunction which abates four of its kilns. Unless under the rule and the record presented we are led to the conclusion that the plaintiff could be afforded all the relief to which he was entitled by a modification of the injunction in this respect, we must say that the contention is answered by the doctrine of the cases of *American Smelting & Refining Co.* v. *Godfrey,* 158 Fed. 225 [14 Ann. Cas. 8], and *Sullivan* v. *Jones & Laughlin Steel Co.,* 208 Pa. St. 540 [66 L. R. A. 712, 57 Atl. 1065], adopted and followed in our decisions. (*Hulbert* v. *California Cement Co., supra; People* v. *Selby Smelting & Lead Co.,* 163 Cal. 84, 94 [Ann. Cas. 1913E, 1267, 124 Pac. 692, 1135]; *Judson* v. *Los Angeles Suburban Gas Co.,* 157 Cal. 168 [21 Ann. Cas. 1247, 26 L. R. A. (N. S.) 183, 106 Pac. 581]; *Peterson* v. *City of Santa Rosa,* 119 Cal. 387 [51 Pac. 557].) Extensive quotations from those cases

appear in *Hulbert* v. *California etc. Cement Co., supra,* at pp. 247–249 and 252, 253. ▉ The doctrine as disclosed by those cases may be stated to be that where a right of the plaintiff has been invaded by the maintenance of a nuisance, and the plaintiff has suffered injury therefrom, an injunction which results in the abatement of the defendant's operations will not be denied solely on the ground that the injury suffered by the defendant will be greater, if the injunction be granted, than the injury suffered by the plaintiff if the injunction be refused.

▉ The defendant contends that all of the infringements upon the plaintiff's rights can be eliminated by the erection of a fireproof sound-absorbing wall inclosing also the four kilns ordered abated. An offer to construct such a wall, with sliding doors to permit loading, was made upon the defendant's motion for a new trial; and testimony of engineers and samples of materials proposed to be used were produced on the hearing of the motion. The trial court, however, declined the offer and denied the motion for a new trial. This ruling is claimed to be prejudicial error and we are urged to reverse or modify the judgment on the ground that the proposed wall will give to the plaintiff all the relief to which he is entitled. But we are not persuaded that the court abused its discretion in denying the motion. The court itself viewed the premises, and although it may have been shown that the wall might tend to reduce the fire hazard and flares, nevertheless the denial of the motion is persuasive that the court remained unconvinced that either the vibrations or noise would be diminished or eliminated. The character of the property abated, and its location with respect to the plaintiff's dwelling, together with the finding that its operation causes great vibration and noise disturbing to the plaintiff and his household, is conclusive against the showing attempted to be made by the defendant. The record shows that the trial court was justified in abating a portion of the defendant's factory on the ground that to control only the manner of its conduct would be inadequate relief to the plaintiff from the nuisance thereby maintained. ▉ The contention is also made that the evidence is insufficient to support the finding that the factory of the defendant as presently operated constitutes a fire hazard. This contention cannot be seriously enter-

tained in view of the fact that in the period beginning in 1917 three serious fires have occurred on the defendant's premises.

■ The fact that the operations are conducted with the consent of the municipality, or that the defendant was doing a legal act, or that its operations are conducted in a district zoned for industry, or that the defendant was first in the field, may not avail the defendant. This conclusion, based on the equitable maxim *"sic utere tuo ut alienum non laedas"*, in *Tuebner* v. *California St. R. R. Co.*, 66 Cal. 171, 173 [4 Pac. 1162, 1164], is stated thus: ''A person may not use his own property, even in and about a business in itself lawful, if it be used in such a manner as to seriously interfere with another in the enjoyment of his right in the use of his property.'' (Civ. Code, sec. 3479; *Judson* v. *Los Angeles Suburban Gas Co., supra; Fendley* v. *City of Anaheim,* 110 Cal. App. 731 [294 Pac. 769]; *Williams* v. *Blue Bird Laundry Co.,* 85 Cal. App. 388 [259 Pac. 484].)

■ That the plaintiff has also for his neighbors an airport on the north and a busy railroad right of way on the south may not control. "The fact that other sources of possible discomfort to plaintiff existed in the neighborhood of his property is no defense to an action of this kind. . . . Nor will the adoption of the most improved appliances and methods of production justify the continuance of that which, in spite of them, remains a nuisance.". (*Judson* v. *Los Angeles Suburban Gas Co., supra,* pp. 171, 173; *Snow* v. *Marian Realty Co.,* 212 Cal. 622 [299 Pac. 720]; *Fendley* v. *City of Anaheim, supra,* p. 737.)

■ No doubt may be entertained of the continuing character of the nuisance maintained by the defendant's operations, so as to make inapplicable the statute of limitations. The defendant's contention in this regard may be disposed of without discussion by reference to the decisions in the cases of *Kafka* v. *Bozio,* 191 Cal. 746 [29 A. L. R. 833, 218 Pac. 753]; *Strong* v. *Sullivan,* 180 Cal. 331 [4 A. L. R. 343, 181 Pac. 59]; *Collins* v. *Sargent,* 89 Cal. App. 107, 115, 116 [264 Pac. 776]; *Williams* v. *Blue Bird Laundry Co.,* 85 Cal. App. 388, 395 [259 Pac. 484]. The record shows that at no time did the plaintiff consent to the defendant's

acts, but that on the other hand his course of conduct was a continuous objection to the defendant's operations.

A petition for a writ of *supersedeas* to stay the effect of the injunction pending appeal was filed herein and was ordered submitted with the appeal on the merits. In view of the disposition of said appeal, a discussion of the questions involved on the petition for the writ of *supersedeas* becomes unnecessary.

The judgment is affirmed.

Rehearing denied.